1
DANIEL J. BERGESON, State Bar No. 105439
dbergeson@be-law.com
2
DONALD P. GAGLIARDI, State Bar No. 138979
dgagliardi@be-law.com
3
BERGESON, LLP
4
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
5
Telephone: (408) 291-6200
Facsimile: (408) 297-6000
6

7
MARK C. HANSEN
REBECCA A. BEYNON, *pro hac vice*
8
KEVIN B. HUFF
KELLOGG, HUBER, HANSEN, TODD,
9
 EVANS & FIGEL, PLLC
Sumner Square
10
1615 M Street, NW, Suite 400
Washington, DC 20036
11
Telephone: (202) 326-7900
12
Facsimile: (202) 326-7999

13
*Attorneys for Plaintiffs Penn Engineering &*
*Manufacturing Corp. and PEM Management, Inc.*
14

15

16
UNITED STATES DISTRICT COURT

17
NORTHERN DISTRICT OF CALIFORNIA

18
SAN JOSE DIVISION

19
PENN ENGINEERING &
MANUFACTURING CORP., a Delaware
20
corporation, and PEM MANAGEMENT, INC., a
Delaware corporation,
21

Plaintiffs,
22

 vs.
23
PENINSULA COMPONENTS, INC., a
24
California corporation,

Defendant.
25

26

27

28

Case No. C07 04231 CRB

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND COUNTERFEITING**

**DEMAND FOR JURY TRIAL**

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiffs Penn Engineering & Manufacturing Corp. and PEM Management, Inc., by and through the undersigned counsel, for their complaint against Defendant Peninsula Components, Inc., allege as follows:

## THE PARTIES

2. Plaintiff Penn Engineering & Manufacturing Corp. ("PEM") is a Delaware corporation headquartered in Danboro, Pennsylvania. PEM is the industry leader in the design and manufacture of self-clinching fasteners.

3. Plaintiff PEM Management, Inc. ("PEM Management") is a Delaware corporation headquartered in Wilmington, Delaware. PEM Management is a wholly-owned subsidiary of PEM.

4. Defendant Peninsula Components, Inc. ("Pencom") is a California corporation with its principal place of business in San Carlos, CA. Pencom was founded in 1982 and manufactures and sells a variety of product fasteners.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Pencom.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400 and 1391(c).

8. Pursuant to Civil L.R. 3-2(c), this action is an Intellectual Property Action to be assigned on a District-wide basis.

## BACKGROUND

### PEM's History of Innovation

9. PEM was founded in 1942 by K.A. Swanstrom, who invented a revolutionary technique to attach "self-clinching fasteners" to pieces of sheet metal. A "self-clinching fastener" is any device, usually threaded, that, when pressed into a softer metal panel, displaces the panel material around the mounting hole, causing the fastener to hold permanently into the sheet. A clinching ring, knurl, ribs or hex head prevents the fastener from rotating in the panel. Thus, self-

1    clinching fasteners become a permanent part of the panel, chassis, bracket, or other item into

2    which they are installed.  Self-clinching fasteners can be installed in sheet metal using standard

3    tools, and do not require soldering, welding, or the creation of a threaded screw-hole in the sheet

4    metal itself.  As a result, self-clinching fasteners are extremely useful in the design and

5    manufacture of any product made using sheet metal that is too thin to be "tapped" (*i.e.*, to allow

6    for the creation of a threaded screw-hole).

7            10.     When Mr. Swanstrom founded PEM, it initially sold only one product:  a self-

8    clinching nut that was used in an electronic device.  The company has expanded considerably in

9    the sixty-five years since it was founded, and now sells over 20 different types of self-clinching

10   fasteners in thousands of sizes and variations.

11           11.     PEM's self-clinching fasteners are used in a wide variety of products, including

12   computer equipment, automobiles, airplanes, business machinery, and farm equipment.

13           12.     PEM's fasteners are extremely durable and are highly resistant to both "pushout"

14   (*i.e.*, the separation of the fastener from the sheet metal, caused by direct pressure on the fastener

15   itself) and "torque-out" (*i.e.*, the rotational slippage of the fastener within the sheet metal, which is

16   typically caused by tightening a screw or bolt in the fastener).

17           13.     As a result of PEM's decades of innovation in the field, PEM and PEM

18   Management have applied for and received many patents and trademarks protecting fastener

19   designs and operations.  The patents and trademarks are owned by PEM Management, which

20   licenses them to PEM on an exclusive basis.

21           14.     PEM sells its products through a global network of authorized distributors.  These

22   distributors sell PEM brand fasteners to a variety of customers, including suppliers of finished

23   sheet metal to original equipment manufacturers ("OEMs").  These OEMs include leading

24   manufacturers of electronic and computer equipment.

25           15.     Due to the high quality of its products, its history in the field, and its commitment

26   to customer service, PEM is recognized as the industry leader; its fasteners are considered to be

27   superior to those of its competitors; and it has developed and enjoys considerable goodwill.  As a

28

1  result, certain OEMs require that their suppliers use only PEM brand self-clinching fasteners in

2  their products.

3      16.    As a result of PEM's position in the industry, some of PEM's competitors attempt

4  to copy PEM products, including PEM's trademarked and patented designs.  In many cases it is

5  difficult to distinguish a genuine PEM part from an imitation part by sight alone, so some OEMs

6  and other downstream customers are misled into purchasing products that appear to contain

7  genuine PEM brand parts, only to subsequently discover – sometimes when the fastener fails –

8  that the product was not a genuine PEM brand product.  In some cases, OEMs and other

9  downstream customers who have been deceived in this way fail to recognize that a defective part

10 is not a genuine PEM brand part, to the detriment of PEM's goodwill and injury to PEM.

11     17.    In order to counter these efforts and to enable its customers and others to identify

12 genuine PEM parts, PEM uses a variety of distinctive configurations in the design of its products

13 and places a variety of distinctive markings on its products.  These configurations and markings

14 are protected by trademarks or design patents.

15     18.    PEM advertises its design patents and trademarks widely and encourages customers

16 to look for these distinctive markings.  As a result, customers at various levels in the industry

17 associate the designs protected by PEM's trademarks and design patents with PEM.  Thus, the

18 OEMs that insist on genuine PEM-brand parts know to look for certain distinctive fastener

19 markings or designs in order to verify that their supplier has, in fact, used genuine PEM parts.

20                              **Pencom's Infringing Activities**

21     19.    Defendant Pencom competes with PEM in the market for certain types of fasteners.

22 Pencom does not enjoy the same history of innovation in the industry for which PEM is known.

23     20.    Pencom sells fasteners to customers either directly or through distributors.

24     21.    Because Pencom does not enjoy PEM's reputation for innovation in the industry, it

25 has resorted to selling products that are identical in appearance to those manufactured by PEM,

26 which can be confused with genuine PEM products.

27     22.    Counsel to PEM contacted Pencom, by a letter dated June 14, 2006, informing

28 Pencom of PEM's trademark and patent rights and stating that its intellectual property rights

1    "appear[ed] to be violated" by Pencom's products.  PEM identified certain specific patents and

2    trademarks owned by PEM Management that Pencom infringed, including all of those that are the

3    subject of this action.

4        23.    Pencom did not cease its infringing activities.  Counsel to PEM then contacted

5    Pencom, by a letter dated May 8, 2007, specifically informing Pencom that its products infringed

6    U.S. Design Patent Nos. D388,316 and D400,430, as well as a trademark registered under U.S.

7    Registration Number 1,400,893.  In subsequent correspondence, including letters dated May 18,

8    2007, and June 11, 2007, Pencom has not disputed that its products infringe either of the

9    aforementioned patents.

10       24.    PEM has also learned that Pencom was promoting some or all of these infringing

11   products using the model numbers that were identical to those of the corresponding PEM products.

12                          **FIRST CLAIM FOR RELIEF**

13                    **INFRINGEMENT OF U.S. PATENT NO. D437,209**

14       25.    Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-24

15   above.

16       26.    On February 6, 2001, the United States Patent and Trademark Office ("PTO") duly

17   and lawfully issued to PEM Design Patent No. D437,209 ("the '209 patent") (attached hereto as

18   Exhibit A), which protects PEM's property right in "[t]he ornamental design for a panel fastener."

19       27.    PEM Management is the owner of all right, title, and interest in and to the '209

20   patent, including the right to sue for and recover for infringement thereof.  PEM Management has

21   granted PEM an exclusive license under the '209 patent.

22       28.    PEM makes, uses, sells, offers to sell, or imports fasteners embodying the patented

23   design.  Specifically, PEM manufactures a line of fasteners with product identifier PFHV, which

24   embody the design of the '209 patent.  PEM has relied on the distinctive design of PFHV fasteners

25   to distinguish the PFHV fasteners from those manufactured by PEM's competitors.

26       29.    Upon information and belief, Defendant Pencom makes, uses, sells, offers to sell,

27   or imports fasteners in the United States that infringe the '209 patent, which Pencom offers for

28   sale under certain product identifiers, including, without limitation, the product identifier CV.

1   Moreover, Pencom's marketing material expressly identifies its CV fasteners as corresponding to

2   PEM's PFHV fasteners.  An ordinary observer, giving such attention as a purchaser usually gives,

3   would conclude that a CV fastener and the design protected by the '209 patent are substantially the

4   same.

5          30.     Defendant Pencom has directly infringed, contributorily infringed, and actively

6   induced the infringement of, the '209 patent.

7          31.     Pencom's infringement of the '209 patent is willful and deliberate.  Upon

8   information and belief, Pencom copied PEM's patented product.  In fact, Pencom offers its CV

9   fasteners using the product identifier for the corresponding PEM products.  In addition, Pencom

10  has had knowledge of the '209 patent and that it infringes the '209 patent since at least June 14,

11  2006, when PEM informed Pencom by letter that its products infringe.

12         32.     PEM and PEM Management have been, and will continue to be, damaged and

13  irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's

14  infringement.

15                          **SECOND CLAIM FOR RELIEF**

16                  **INFRINGEMENT OF U.S. PATENT NO. D357,176**

17         33.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-32

18  above.

19         34.     On April 11, 1995, the PTO duly and lawfully issued to PEM Design Patent No.

20  D357,176 ("the '176 patent") (attached hereto as Exhibit B), which protects PEM's property right

21  in "[t]he ornamental design for a panel fastener."

22         35.     PEM Management is the owner of all right, title, and interest in and to the '176

23  patent, including the right to sue for and recover for infringement thereof.  PEM Management has

24  granted PEM an exclusive license under the '176 patent.

25         36.     PEM makes, uses, sells, offers to sell, or imports fasteners embodying the patented

26  design.  Specifically, PEM manufactures a line of self-clinching fasteners embodying the design of

27  the '176 patent, which it has assigned product identifiers PFC2P and PFC4.  PEM has relied on the

28

- 5 -

1  distinctive design of PFC2P fasteners to distinguish the PFC2P fasteners from those manufactured

2  by PEM's competitors.

3      37.    Upon information and belief, Defendant Pencom makes, uses, sells, offers to sell,

4  or imports fasteners in the United States that infringe the '176 patent, which Pencom offers for

5  sale under certain product identifiers, including, without limitation, the product identifier CC.

6  Pencom's marketing material expressly identifies its CC fasteners as corresponding to PEM's

7  "PFC2" fasteners.  Upon information and belief, this identification is intended as a reference to

8  PEM's PFC2P fasteners.  An ordinary observer, giving such attention as a purchaser usually gives,

9  would conclude that a CC fastener and the design protected by the '176 patent are substantially the

10  same.

11      38.    Defendant Pencom has directly infringed, contributorily infringed, and actively

12  induced the infringement of, the '176 patent.

13      39.    Pencom's infringement of the '176 patent is willful and deliberate.  Upon

14  information and belief, Pencom copied PEM's patented product.  In fact, Pencom offers its CC

15  fasteners using product identifier "PFC2," which appears to be a reference to the identifier of the

16  corresponding PEM products.  In addition, Pencom has had knowledge of the '176 patent and that

17  it infringes the '176 patent since at least June 14, 2006, when PEM informed Pencom by letter that

18  its products infringe.

19      40.    PEM and PEM Management have been, and will continue to be, damaged and

20  irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's

21  infringement.

22                              **THIRD CLAIM FOR RELIEF**

23                  **INFRINGEMENT OF U.S. PATENT NO. D388,316**

24      41.    Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-40

25  above.

26      42.    On December 30, 1997, the PTO duly and lawfully issued to PEM Design Patent

27  No. D388,316 ("the '316 patent") (attached hereto as Exhibit C), which protects PEM's property

28  rights in "[t]he ornamental design for a panel fastener."

43.     PEM Management is the owner of all right, title, and interest in and to the '316 patent, including the right to sue for and recover for infringement thereof.  PEM Management has granted PEM an exclusive license under the '316 patent.

44.     PEM makes, uses, sells, offers to sell, or imports fasteners embodying the patented design.  Specifically, PEM manufactures a line of self-clinching fasteners embodying the design of the '316 patent, which it has assigned product number PF12.  PEM has relied on the distinctive design of PF12 fasteners to distinguish the PF12 fasteners from those manufactured by PEM's competitors.

45.     Upon information and belief, Defendant Pencom makes, uses, sells, offers to sell, or imports fasteners in the United States that infringe the '316 patent, which Pencom offers for sale under certain product identifiers, including, without limitation, the product identifiers PR2901 and PR3349 under its CE product line.  Moreover, Pencom's marketing material expressly identifies its CE fasteners as corresponding to PEM's PF11 and PF12 fasteners.  An ordinary observer, giving such attention as a purchaser usually gives, would conclude that certain CE fasteners, including the PR2901 and PR 3349 fasteners, and the design protected by the '316 patent are substantially the same.

46.     Defendant Pencom has directly infringed, contributorily infringed, and actively induced the infringement of, the '316 patent.

47.     Pencom's infringement of the '316 patent is willful and deliberate.  Upon information and belief, Pencom copied PEM's patented product.  In fact, Pencom offers for sale its CE product line using the product identifier for the corresponding PEM products.  In addition, Pencom has had knowledge of the '316 patent and that it infringes the '316 patent since at least June 14, 2006, when PEM informed Pencom by letter that its products infringe.

48.     PEM and PEM Management have been, and will continue to be, damaged and irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's infringement.

//

//

**FOURTH CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. D400,430**

49.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-48 above.

50.     On November 3, 1998, the PTO duly and lawfully issued to PEM Patent No. D400,430 ("the '430 patent") (attached hereto as Exhibit D), which protects PEM's property rights in "[t]he ornamental design for a spring-loaded panel fastener."

51.     PEM Management is the owner of all right, title, and interest in and to the '430 patent, including the right to sue for and recover for infringement thereof.  PEM Management has granted PEM an exclusive license under the '430 patent.

52.     PEM makes, uses, sells, offers to sell, or imports fasteners embodying the patented design.  Specifically, PEM manufactures a line of self-clinching fasteners embodying the design of the '430 patent, which it has assigned product number PF11.  PEM has relied on the distinctive design of PF11 fasteners to distinguish the PF11 fasteners from those manufactured by PEM's competitors.

53.     Upon information or belief, Defendant Pencom makes, uses, sells, offers to sell, or imports fasteners in the United States that infringe the '430 patent, which Pencom offers for sale under certain product identifiers, including, without limitation, certain product identifiers under the CE line of products.  Moreover, Pencom's marketing material expressly identifies its CE fasteners as corresponding to PEM's PF11 and PF12 fasteners.  An ordinary observer, giving such attention as a purchaser usually gives, would conclude that certain of Pencom's CE fasteners and the design protected by the '430 patent are substantially the same.

54.     Defendant Pencom has directly infringed, contributorily infringed, and actively induced the infringement of, the '430 patent.

55.     Pencom's infringement of the '430 patent is willful and deliberate.  Upon information and belief, Pencom copied PEM's patented product.  In fact, Pencom offers for sale its CE fasteners using the product identifier for the corresponding PEM products.  In addition,

1    Pencom has had knowledge of the '430 patent and that it infringes the '430 patent since at least

2    June 14, 2006, when PEM informed Pencom by letter that its products infringe.

3        56.    PEM and PEM Management have been, and will continue to be, damaged and

4    irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's

5    infringement.

6                            **FIFTH CLAIM FOR RELIEF**

7                    **INFRINGEMENT OF U.S. PATENT NO. 5,239,135**

8        57.    Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-56

9    above.

10        58.    On April 24, 1993, the PTO duly and lawfully issued to PEM utility Patent No.

11    5,239,135 ("the '135 patent") (attached hereto as Exhibit E), which protects PEM's property right

12    in "[a] press-in type fastener for mounting circuit board components or circuit boards to a chassis

13    grips a through-hole in the circuit board by radial expansion of the shank."

14        59.    PEM Management is the owner of all right, title, and interest in and to the '135

15    patent, including the right to sue for and recover for infringement thereof.  PEM Management has

16    granted PEM an exclusive license under the '135 patent.

17        60.    PEM makes, uses, sells, offers to sell, or imports fasteners embodying the patented

18    features claimed in the '135 patent.  Specifically, PEM manufactures a line of fasteners based on

19    the '135 patent, which PEM has assigned the product identifiers KPS6 and KPS9.

20        61.    Upon information and belief, Defendant Pencom makes, uses, sells, offers to sell,

21    or imports fasteners in the United States that infringe the '135 patent, which Pencom offers for

22    sale under certain product identifiers, including, without limitation, the product identifier NK.

23        62.    Defendant Pencom has directly infringed and contributorily infringed at least one

24    claim of the '135 patent and induced the infringement of at least one claim of the '135 patent

25    either literally or by the Doctrine of Equivalents.

26        63.    Pencom has had knowledge of the patent and that it infringes the '135 patent since

27    at least June 14, 2006, when PEM informed Pencom by letter that its products infringe.  As a

28    result, Pencom's infringement of the '135 patent is willful and deliberate.  In addition, upon

1  information and belief, Pencom copied PEM's patented product.  In fact, Pencom offers its NK

2  fasteners using the product identifier for the corresponding PEM products.

3      64.    PEM and PEM Management have been, and will continue to be, damaged and

4  irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's

5  infringement.

6                    **SIXTH CLAIM FOR RELIEF**

7      **INFRINGEMENT OF U.S. TRADEMARK NOS. 1,400,893 AND 3,404,061**

8      65.    Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-64

9  above.

10     66.    On July 15, 1986, the PTO duly and lawfully registered and issued to PEM

11  Registered U.S. Trademark No. 1,400,893 ("the '893 trademark") (attached hereto as Exhibit F).

12  The '893 trademark protects a distinctive mark used on a floating fastener in which one square is

13  nested inside another.  The mark is nonfunctional.

14     67.    On April 1, 2008, the PTO duly and lawfully registered and issued to PEM

15  Registered U.S. Trademark No. 3,404,061 ("the '061 trademark") (attached hereto as Exhibit G).

16  The '061 trademark protects a distinctive mark used on a floating fastener in which one square is

17  nested inside a second square with scalloped sides.  The mark is nonfunctional.

18     68.    PEM Management is the owner of all right, title, and interest in and to the '893 and

19  '061 trademarks, including the right to sue for and recover for infringement thereof.  PEM

20  Management has granted PEM an exclusive license under the '893 and '061 trademarks, which

21  PEM affixes to its fasteners.

22     69.    PEM advertises and sells fasteners incorporating the '893 and/or '061 trademarks.

23  Specifically, PEM manufactures a line of fasteners that incorporate the '893 and/or '061

24  trademarks, which it has assigned the product identifiers AC, LAC, AS, LAS, and F10.

25     70.    Upon information and belief, Defendant Pencom offers for sale and sells fasteners

26  in the United States that infringe the '893 and/or '061 trademarks.  Pencom offers for sale under

27  certain product identifiers, including, without limitation, the product identifiers NA and NAL

28  (with part numbers PR2259 and others), fasteners that an ordinary observer would find

- 10 -

1  substantially identical to PEM's AC, LAC, AS, and LAS fasteners and bear the '893 and/or '061

2  trademarks.

3         71.     Pencom's use of PEM's marks in fasteners with certain product identifiers,

4  including, without limitation, the product identifiers NA and NAL (with part numbers PR2259 and

5  others), is likely to cause confusion regarding the affiliation, sponsorship, and source of such

6  products.

7         72.     Defendant Pencom has directly infringed the '893 and/or '061 trademarks.

8         73.     Pencom's infringement of the '893 and/or '061 trademarks is willful and deliberate.

9  Pencom has had knowledge of the '893 trademark and that it infringes the '893 trademark since at

10 least June 14, 2006, when PEM informed Pencom by letter that its products infringe.  Pencom has

11 had knowledge of the '061 trademark and that it infringes the '061 trademark since at least April

12 17, 2008, when PEM informed Pencom by letter that the '061 trademark had been registered.

13 Pencom has, to date, failed and refused to cease its infringing activities.

14        74.     PEM and PEM Management have been, and will continue to be, damaged and

15 irreparably injured by Pencom's infringing activities unless this Court prohibits Pencom's

16 infringement.

17                        **SEVENTH CLAIM FOR RELIEF**

18               **VIOLATION OF SECTION 43(a) OF THE LANHAM ACT**

19        75.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-74

20 above.

21        76.     PEM owns the rights to the design of its AC, LAC, AS, LAS, and F10 lines of

22 fasteners, and such design is entitled to protection pursuant to the provisions of 15 U.S.C.

23 § 1125(a).  The design of PEM's AC, LAC, AS, LAS, and F10 lines of fasteners acts as a

24 designation of origin that allows and causes customers to identify the product as a genuine PEM

25 part.

26        77.     PEM has advertised the design of its AC, LAC, AS, LAS, and F10 lines of

27 fasteners continuously since 1986, and has encouraged customers to look for the distinctive design

28

1    of those fasteners in order to identify genuine PEM parts.  Customers in the industry associate the

2    distinctive design of PEM's AC, LAC, AS, LAS, and F10 lines of fasteners with PEM.

3          78.     Upon information and belief, Pencom has incorporated the design of PEM's AC,

4    LAC, AS, and LAS lines of fasteners into fasteners that it offers for sale in the United States under

5    certain product identifiers, including, without limitation, the product identifiers NA and NAL.

6    Pencom offers the fasteners for sale to the same class of customers as those to which PEM sells its

7    fasteners.  By so doing, Pencom has used in commerce a false designation of origin.

8          79.     Pencom's use of PEM's design in its NA and NAL fasteners is likely to cause

9    confusion regarding the affiliation, sponsorship, and source of such products.

10         80.     By its actions, Pencom has violated Section 43(a) of the Lanham Act, 15 U.S.C.

11   § 1125(a), in violation of Plaintiffs' rights and to its continuing damage and irreparable injury.

12   **EIGHTH CLAIM FOR RELIEF**

13   **COUNTERFEITING OF U.S. TRADEMARK NOS. 1,400,893 AND 3,404,061**

14         81.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-80

15   above.

16         82.     On July 15, 1986, the PTO duly and legally issued PEM Registered Trademark No.

17   1,400,893 ("the '893 trademark").  The '893 trademark protects a mark used on a floating fastener

18   in which one square is nested inside another.

19         83.     On April 1, 2008, the PTO duly and legally issued PEM Registered Trademark No.

20   3,404,061 ("the '061 trademark").  The '061 trademark protects a mark used on a floating fastener

21   in which one square is nested inside a second square with scalloped sides.

22         84.     Pencom has used spurious marks ("Pencom's Marks") that are identical to or

23   substantially indistinguishable from the '893 and/or '061 trademarks.  Upon information and

24   belief, Pencom has on multiple occasions used, sold, offered for sale, distributed, or advertised

25   products in the United States containing Pencom's Marks, including fasteners with certain product

26   identifiers, including, without limitation, the product identifiers NA and NAL (with part numbers

27   PR2259 and others).

28         85.     Pencom knew that its mark was counterfeit, and its use of the mark is willful and

1  deliberate.

2      86.    At the time of Pencom's activities, the '893 and/or '061 trademarks were in use by

3  PEM and registered on the Principal Register for use on the same goods to which Pencom applied

4  its marks, *i.e.* floating fasteners.

5      87.    Pencom was not authorized to use the '893 and/or '061 trademarks.  Pencom's use

6  of the '893 and/or '061 trademarks to advertise, offer for sale, sell and distribute Pencom's

7  products was and is without consent of PEM.

8      88.    Pencom's unauthorized use of the '893 and/or '061 trademarks is likely to cause

9  confusion or mistake or to deceive customers as to the origin of Pencom's fasteners.  Specifically,

10  Pencom's unauthorized use of the '893 and/or '061 trademarks is likely to cause the public to

11  believe that Pencom's counterfeit products are the same as PEM's products and/or that Pencom is

12  authorized, sponsored or approved by PEM, or that Pencom is affiliated, connected or associated

13  with or in some way related to PEM.

14      89.    Pencom's intentional and willful use of its counterfeit mark for its own personal

15  financial gain makes this an exceptional case.

16      90.    Defendants' unauthorized use of PEM's trademark as set forth above is likely to

17  result in Defendant unfairly benefiting from PEM's advertising and promotion and profiting from

18  the reputation of PEM, all to the substantial and irreparable injury of the public.

19      91.    Pencom's acts constitute trademark counterfeiting in violation of Section 32 of the

20  Lanham Act, 15 U.S.C. §1114.

21      92.    PEM and PEM Management have been and will continue to be damaged and

22  irreparably injured by Pencom's use of a counterfeit of its mark unless Pencom's wrongful acts are

23  enjoined by the Court.

24              **<u>PRAYER FOR RELIEF</u>**

25  WHEREFORE, Plaintiffs pray that the Court:

26      A.    Enter judgment for Plaintiffs and against Pencom for infringement of the '209

27          patent;

28

B.  Enter judgment for Plaintiffs and against Pencom for infringement of the '176 patent;

C.  Enter judgment for Plaintiffs and against Pencom for infringement of the '316 patent;

D.  Enter judgment for Plaintiffs and against Pencom for infringement of the '430 patent;

E.  Enter judgment for Plaintiffs and against Pencom for infringement of the '135 patent;

F.  Enter judgment that the above infringement of Pencom is willful and award Plaintiffs treble damages, costs, expenses and prejudgment interest as provided by 35 U.S.C. § 284;

G.  Enter judgment that this case is exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiffs should be awarded their reasonable attorney fees;

H.  Enter judgment for Plaintiffs and against Pencom for infringement of the '893 trademark;

I.  Enter judgment for Plaintiffs and against Pencom for infringement of the '061 trademark;

J.  Enter judgment that Pencom has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by unlawfully copying the design of PEM's AC and LAC fasteners;

K.  Enter judgment that the above infringement of Pencom is willful;

L.  Enter judgment for Plaintiffs and against Pencom with respect to Pencom's use of a counterfeit of the '893 trademark;

M.  Enter judgment for Plaintiffs and against Pencom with respect to Pencom's use of a counterfeit of the '061 trademark;

N.  Award Plaintiffs damages for Pencom's infringement and counterfeiting of its trademark and/or Pencom's violations of Section 43(a) of the Lanham Act,

1    including but not limited to three times Pencom's profits and/or Plaintiffs'

2    damages, the cost of the action, and a reasonable attorney's fee;

3    O.    Award Plaintiffs statutory damages for Pencom's use of counterfeit mark pursuant

4    to 15 U.S.C. § 1117(c);

5    P.    Preliminarily and permanently enjoin further infringing activity by Pencom and its

6    officers, agents, servants, employees, attorneys, and all persons in active concert or

7    participation with them; and

8    Q.    Award Plaintiffs such other relief as the Court deems just and appropriate.

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1

## DEMAND FOR JURY TRIAL

2

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a jury trial of all issues triable by jury.

3

4

Dated:  May 21, 2008                                    Respectfully submitted,

5

                                                      _____/s/_____
Donald P. Gagliardi, State Bar No. 138979

6

BERGESON, LLP
303 Almaden Boulevard, Suite 500

7

San Jose, CA 95110-2712
Tel:  (408) 291-6200

8

Fax:  (408) 297-6000

9

Mark C. Hansen

10

Rebecca A. Beynon, *pro hac vice*
Kevin B. Huff

11

KELLOGG, HUBER, HANSEN,
     TODD, EVANS & FIGEL, P.L.L.C.

12

1615 M Street, N.W., Suite 400
Washington, D.C. 20036

13

Tel:  (202) 326-7900
Fax:  (202) 326-7999

14

15

*Attorneys for Plaintiffs Penn Engineering &*
*Manufacturing Corp. and PEM Management Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND COUNTERFEITING
Case No. C07 04231 CRB